IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Safeco Insurance Company of Indiana | : |
| Plaintiff, | : Case No.: 1:18-cv-1549 |
| vs. | : Judge: _____ |
| William Dent<br>2655 Harrison Avenue<br>Canton, Ohio 44706 | : |
| and | : |
| Dent Properties, LLC<br>c/o Statutory Agent GO55, LLC<br>30799 Pinetree Road #200<br>Pepper Pike, OH 44124, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

By and through counsel, Plaintiff Safeco Insurance Company of Indiana ("Safeco") hereby brings the following Complaint for Declaratory Judgment against William Dent ("Mr. Dent") and Dent Properties LLC ("Dent Properties").

By way of overview, Mr. Dent is a defendant in *Ohio Security Insurance Company v. William Dent, et al.*, pending before this Court as Case No. 1:17-cv-00884 ("the Underlying Action"). Mr. Dent has tendered multiple claims asserted against him in the Underlying Action to Safeco for a defense and potential indemnification. Safeco issued three homeowner's insurance policies to Mr. Dent which he alleges apply to provide him with defense and indemnity coverage.

In this action, Safeco seeks a declaration from the Court that, under those insurance policies, Safeco (1) has no duty to defend Mr. Dent against the First Amended Complaint filed

1

by Ohio Security Insurance Company ("Ohio Security") or the First Amended Crossclaim filed by Dent Properties, LLC ("Dent Properties") in the Underlying Action; and (2) has no potential duty to indemnify Mr. Dent for any judgment entered against him in the Underlying Action.

## The Parties and Jurisdiction

1. Safeco is a foreign corporation with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts.

2. Mr. Dent is a resident and citizen of the State of Ohio and a named defendant in the Underlying Action.

3. At all times relevant to this case, Dent Properties was an Ohio limited liability company with its principal place of business located at 1210 E. 55th Street, Cleveland, Ohio 44103. On information and belief, its members are residents and citizens of the State of Ohio.

4. This Court has personal jurisdiction over Mr. Dent and Dent Properties based on their residency within the jurisdiction of the Court and based on their being parties in the Underlying Action.

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332, for the amount in controversy in this action exceeds the sum of $75,000, exclusive of costs and interest, and this action is between citizens of different states.

6. This Court has the power to grant the relief sought in this action pursuant to 28 U.S.C. §2201.

## Factual Background – The Underlying First Amended Complaint Against Mr. Dent by Ohio Security Insurance Company

7. Ohio Security initiated the Underlying Action against Mr. Dent, Dent Properties, Brite Metal, Inc. ("Brite Metal"), and AirFasco, Inc. ("AirFasco").

8. A copy of the First Amended Complaint in the Underlying Action, which was deemed filed on January 23, 2018, is attached as Exhibit A.

9. Ohio Security alleges that Alsoussou & Son, Inc. ("Alsoussou") owned a commercial property located at 1240 E. 55th Street, Cleveland, Ohio 44103 ("the Alsoussou Property"). (Ex. A, ¶3.)

10. Ohio Security alleges that it insured the Alsoussou Property pursuant to a policy of insurance, Policy No. 56305594 ("the Alsoussou Policy"). (Ex. A, ¶12.)

11. Ohio Security alleges that Dent Properties had a principal place of business located at 1210 E. 55th Street, Cleveland, OH, which neighbored the Alsoussou Property. (Ex. A, ¶¶4, 13.)

12. Ohio Security alleges that on or about May 2, 2015, Mr. Dent and employees, agents and/or representatives of Dent Properties, Brite Metal, and AirFasco were disposing of solid wastes by openly burning the waste at 1210 E. 55th Street in Cleveland, Ohio (1210 E. 55th Street and 1230 E. 55th Street, both in Cleveland, are individually and collectively referred to herein as "the Dent Property"). (Ex. A, ¶14.)

13. Ohio Security alleges that on or about May 2, 2015, a fire ("the Fire") occurred at the Dent Property that spread and caused damages to the Alsoussou Property. (Ex. A, ¶15.)

14. Ohio Security alleges that the damages sustained to the Alsoussou Property were caused by Mr. Dent's and the other defendants in the Underlying Action's improper and negligent burning of solid wastes at the Dent Property and by their negligently permitting the Fire to spread to the Alsoussou Property. (Ex. A, ¶16.)

15. Ohio Security alleges that Alsoussou, as a result of the Fire, sustained significant damages to its real and business property as well as additional expenses and losses. (Ex. A, ¶17.)

16. Ohio Security alleges that pursuant to the terms and conditions of the Alsoussou Policy, Ohio Security made payments to or on behalf of Alsoussou in an amount in excess of $75,000. (Ex. A, ¶18.)

17. Ohio Security alleges that by virtue of the payments made to or on behalf of Alsoussou, Ohio Security is now contractually, legally and equitably subrogated to the rights of recovery of Alsoussou to the extent of its payments. (Ex. A, ¶19.)

18. In the Underlying Action, Ohio Security asserts six causes of action against Mr. Dent in his individual capacity based on the foregoing conduct: (a) Negligence; (b) Negligence Per Se based on violations of Ohio Revised Code; (c) Strict Liability; (d) Negligence Res Ipsa Loquitur; (e) Trespass; and (f) Nuisance. (Ex. A, ¶¶20-56.)

**Factual Background – The Underlying Crossclaim
Against Mr. Dent by Dent Properties, LLC**

19. In the Underlying Action, Dent Properties filed a First Amended Crossclaim against Mr. Dent, Brite Metal, and AirFasco.

20. A copy of the First Amended Crossclaim, which was deemed filed on February 6, 2018, is attached as Exhibit B.

21. Dent Properties alleges it is an Ohio limited liability company whose sole member is GO55, LLC ("GO55"); that GO55 is also an Ohio limited liability company whose members are Henry Brownell ("Mr. Brownell") and August Garofoli ("Mr. Garofoli"); and that Mr. Brownell and Mr. Garofoli are domiciled in the State of Ohio. (Ex. B, ¶1.)

22. Dent Properties alleges that Mr. Dent at one time had a 100% ownership interest in Dent Properties. (Ex. B, ¶8.)

23. Dent Properties alleges that in May 2015, Mr. Dent sold his 100% ownership interest in Dent Properties to GO55 by way of an Equity Purchase Agreement ("the

4

Transaction"), such that GO55 became the 100% owner and sole member of Dent Properties. (Ex. B, ¶9.)

24. Dent Properties alleges that Dent Properties was a single asset Ohio limited liability company with its sole asset being the Dent Property. (Ex. B, ¶10.)

25. Dent Properties alleges the sale price in the Transaction was $209,000. (Ex. B, ¶11.)

26. Dent Properties alleges the Transaction closed on May 1, 2015. (Ex. B, ¶12.)

27. Dent Properties alleges, upon information and belief, Mr. Dent had spent the months of February, March, and April of 2015 attempting to clean up and remove various waste material from the Dent Property, in part because he was under pressure from the Environmental Protection Agency for various violations related to the Dent Property. (Ex. B, ¶13.)

28. Dent Properties alleges that during the closing of the Transaction, Mr. Dent informed Mr. Brownell and Mr. Garofoli that he had been burning some of the waste material to dispose of it. (Ex. B, ¶13.)

29. Dent Properties alleges that on May 1, 2015, Mr. Brownell and Mr. Garofoli told Mr. Dent that he could take one more day to finish cleaning up and removing the waste material from the Dent Property, but that Mr. Brownell and Mr. Garofoli further informed Mr. Dent that they would arrive at the Dent Property the next day to pick up the keys to the Dent Property from Mr. Dent. (Ex. B, ¶13.)

30. Dent Properties alleges that on May 2, 2015—the day after the Transaction closed—Mr. Brownell and Mr. Garofoli visited the Dent Property to receive the keys to the Dent Property from Mr. Dent and that Mr. Dent met them at the gate of the Dent Property and had to

unlock the gate for Mr. Brownell and Mr. Garofoli to allow them to access the Dent Property. (Ex. B, ¶14.)

31. Dent Properties alleges that while Mr. Brownell and Mr. Garofoli were outside the locked Dent Property, Mr. Dent was inside the locked Dent Property and had full exercise and control over it. (Ex. B, ¶14.)

32. Dent Properties alleges that in addition to Mr. Dent, at least two other individuals were at the Dent Property helping Mr. Dent clean up and remove the remaining waste material from the Dent Property—Randall S. Workman ("Mr. Workman") and Albert Godzek ("Mr. Godzek"). (Ex. B, ¶15.)

33. Dent Properties alleges that on May 2, 2015, Mr. Workman was an employee of Brite Metal. (Ex. B, ¶16.)

34. Dent Properties alleges that on May 2, 2015, Mr. Godzek was an employee of Brite Metal and AirFasco. (Ex. B, ¶17.)

35. Dent Properties alleges that on May 2, 2015, both Mr. Workman and Mr. Godzek were wearing dark blue and grey "Brite Metal" employee work shirts and were working under Mr. Dent's authority, supervision, and control and pursuant to Mr. Dent's orders, and that at least one of the two individuals was operating a Bobcat loader and loading waste material into a Brite Metal tractor trailer to be transported off the Dent Property. (Ex. B, ¶18.)

36. Dent Properties alleges that Mr. Workman and Mr. Godzek were working at the Dent Property on behalf of Mr. Dent, Brite Metal, and/or AirFasco but were paid by Brite Metal. (Ex. B, ¶19.)

37. In discovery in the Underlying Action, Mr. Dent has admitted that, on the day of the Fire, Mr. Workman and Mr. Godzek were at the Dent Property and were employees of Brite

Metal, although Mr. Dent denies that they were working in their capacity as such at the time of the Fire. (Responses 6-7 and 10-11 of Mr. Dent's Responses to Requests for Admissions, a copy of which is attached as Exhibit C.)

38. Mr. Dent has also admitted that, on the day of the Fire, he owned an interest in Brite Metal. (Ex. C, Response 13.)

39. Dent Properties alleges that to the extent Mr. Dent was using the resources of Brite Metal and AirFasco to perform work on the Dent Property, Mr. Dent was working as an agent of Brite Metal and AirFasco. (Ex. B, ¶20.)

40. Dent Properties alleges that upon arriving at the Dent Property on May 2, 2015, Mr. Brownell and Mr. Garofoli immediately observed smoke rising from one of its warehouses and realized that there was a fire at the Dent Property. (Ex. B, ¶21.)

41. Dent Properties alleges that the Cleveland Fire Department arrived at the Dent Property but was not able to put the Fire out, so the fire department let the Fire proceed as a controlled burn. (Ex. B, ¶22.)

42. Dent Properties alleges that the Cleveland Police Department also arrived at the Dent Property and ultimately arrested Mr. Dent. (Ex. B, ¶23.)

43. Dent Properties alleges that upon information and belief, Mr. Dent was indicted for aggravated arson, open dumping and burning, engaging in improper asbestos abatement, and improperly disposing of solid waste. (Ex. B, ¶24.)

44. Dent Properties alleges that Mr. Dent was permitted to plead no contest to attempted open dumping and burning to resolve the matter and that one condition of Mr. Dent's plea deal was that he would pay restitution to the City of Cleveland and the Cleveland

Environmental Crimes Task Force for his persistent, wrongful, and illegal disposal of waste materials. (Ex. B, ¶24.)

45. Mr. Dent was charged in connection with the Fire with three counts of open dumping in violation of Ohio R.C. §3734.03; one count of a solid and hazardous waste violation pursuant to Ohio R.C. §3734.11; one count of an asbestos abatement violation pursuant to R.C. §3734.11; and three counts of aggravated arson in violation of R.C. §29602.02(A)(1). (These criminal charges are documented in Exhibit D.)

46. To resolve the charges against him, Mr. Dent pled no contest to attempted open dumping and burning pursuant to R.C. §2923.02 and R.C. §3734.03.

47. Dent Properties alleges that on or about November 18, 2015, AirFasco paid the restitution that Mr. Dent owed to the City of Cleveland and the Cleveland Environmental Crimes Task Force, in the amount of $10,000 to each. (Ex. B, ¶25.)

48. Dent Properties alleges that Mr. Dent and/or the individuals working on behalf of Mr. Dent, Brite Metal, and/or AirFasco started the Fire. (Ex. B, ¶26.)

49. Dent Properties alleges that the Fire caused significant fire damage to two warehouses on the Dent Property, such that the value of the Dent Property was significantly diminished. (Ex. B, ¶27.)

50. Dent Properties alleges that at the time of the Transaction, Mr. Brownell and Mr. Garofoli had a third-party buyer lined up and ready to purchase the Dent Property from Dent Properties for approximately $600,000. (Ex. B, ¶28.)

51. Dent Properties alleges that after the Fire, the third-party buyer backed out of the deal to purchase the Dent Property. (Ex. B, ¶29.)

52. Dent Properties alleges that since the Fire, Mr. Brownell and Mr. Garofoli have sought other parties to buy the Dent Property but, despite reasonable and diligent efforts, they have not been able to secure another buyer.  (Ex. B, ¶30.)

53. Dent Properties alleges that a different third-party buyer has recently expressed interest in buying the Dent Property for $50,000.  (Ex. B, ¶31.)

54. Dent Properties alleges that the Fire caused damage to the Alsoussou Property and Ohio Security paid the loss sustained.  (Ex. B, ¶32.)

55. Dent Properties alleges that Ohio Security, as subrogee based on the payment for the Alsoussou Property, brought the Underlying Action against, among others, Dent Properties to recover the money it paid.  (Ex. B, ¶32.)

56. In the First Amended Crossclaim, Dent Properties asserts six causes of action against Mr. Dent in his individual capacity based on the foregoing conduct: (a) Trespass; (b) Negligence; (c) Negligence Per Se; (d) Strict Liability; (e) Nuisance; and (f) Contribution.  (Ex. B, ¶¶33-65.)

**Factual Background – Mr. Dent Requests Coverage From Safeco**

57. Safeco issued three policies of insurance ("the Policies") to Mr. Dent:

    a. OK 6203868, effective 7/23/2014 to 7/23/2015, insuring 2876 Kent Road, Silver Lake OH 44224-3739.

    b. OK 5853880, effective 6/6/2014 TO 6/6/2015 insuring 2400 Orchid Street NW, North Canton, OH 44720-6238.

    c. OK 5948651, effective 8/7/2014 to 8/7/2015, insuring 20580 Salt Run Road, Caldwell, OH 43724-9795.

58. Certified copies of each of the Policies, which have been Bates-labeled for identification purposes only, are attached as Exhibit E, F and G, respectively.

59. Mr. Dent has requested that Safeco defend and, if necessary, indemnify Mr. Dent pursuant to the Policies for the causes of action asserted against him in the First Amended Complaint and the First Amended Crossclaim.

60. Safeco has been defending Mr. Dent against the causes of action in the First Amended Complaint and the First Amended Crossclaim (and the original pleadings) subject to reservation of rights letters issued on September 7, 2017; January 28, 2018; and March 1, 2018.

**Factual Background – Mr. Dent's Recorded Interview with Safeco**

61. On May 15, 2017, Mr. Dent gave a Recorded Interview to Safeco.

62. A transcript of the Recorded Interview is attached as Exhibit H.

63. During the Recorded Interview, Mr. Dent denied that he was present at the Dent Property prior to the Fire. (Ex. H, p. 11.)

64. During the Recorded Interview, Mr. Dent stated that he did not arrive at the Dent Property until after the Fire began. (Ex. H, p. 11.)

65. During the Recorded Interview, Mr. Dent stated that he did not remember the names of the people who were burning items at the Dent Property prior to the Fire. (Ex. H, p. 12-13.)

66. During the Recorded Interview, Mr. Dent stated that because the Fire occurred the day after the Transaction, he was "not sure what went on" with the Fire. (Ex. H, p. 12.)

**Factual Background – The Policies' Pertinent Coverage Provisions**

67. Mr. Dent is a named insured under the Policies.

68. In Section II – Liability Coverages in each of the Policies, the Policies provide Coverage E – Personal Liability coverage in pertinent part as follows:

> If a claim is made or a suit is brought against any insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

(Ex. E, SAF 00028; Ex. F, SAF 00078; Ex. G, SAF 00149.)[1]

69. The Fire caused damage to the Dent Property and the Alsoussou Property.

70. The Policies define "[o]ccurrence" as "an accident, including exposure to conditions which results in: (1) *bodily injury*; or (2) *property damage*; during the policy period." (Ex. E, SAF 00039; Ex. F, SAF 00089; Ex. G, SAF 00160.)

**Factual Background – The Policies' Pertinent Exclusions and Conditions**

71. Pursuant to Exclusion 1(a) in pertinent part as it relates to Coverage E, the Policies do not apply to "property damage" "which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*." This exclusion applies even if: "(1) such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or (2) such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended." (Ex. E, SAF 00029; Ex. F, SAF 00079; Ex. G, SAF 00150.)

72. Pursuant to Exclusion 1(b) in pertinent part as it relates to Coverage E, the Policies do not apply to "property damage" "which results from violation of criminal law

---

[1] All emphasized terms in the references to the Policies are emphasized in the Policies, and that emphasis indicates that the terms are defined therein.

11

committed by, or with knowledge or consent of any *insured*." This exclusion applies "whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance." (Ex. E, SAF 00029; Ex. F, SAF 00079; Ex. G, SAF 00150.)

73. Pursuant to Exclusion 1(c) in pertinent part as it relates to Coverage E, the Policies do not apply to "property damage" "arising out of *business* pursuits of any *insured*." (Ex. E, SAF 00029; Ex. F, SAF 00079; Ex. G, SAF 00150.)

74. The Policies define "business" to mean:

> a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:
>
> (1) One or more activities, not described in (2) below, for which no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and
>
> (2) Volunteer activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

(Ex. E, SAF 00038; Ex. F, SAF 00088; Ex. G, SAF 00159.)

75. Pursuant to Exclusion 1(e) in pertinent part as it relates to Coverage E, the Policies do not apply to "property damage" "arising out of any premises owned or rented to any *insured* which is not an *insured location*." (Ex. E, SAF 00029; Ex. F, SAF 00079; Ex. G, SAF 00150.)

76. The Dent Property was not an "insured location" under any of the Policies.

77. The Policies contain an "Additional Liability Coverage" provision, which provides in pertinent part:

> (3) Damage to Property of Others. We will pay on a *replacement cost* basis up to $500 per *occurrence* for

12

> *property damage* to property of others caused by an *insured*.
> We will not pay for *property damage*:
>
> d. arising out of:
>
> (1) *business* pursuits;
>
> (2) any act or omission in connection with a premises owned, rented, or controlled by an insured, other than the *insured location*[.]

(Ex. E, SAF 00033; Ex. F, SAF 00083; Ex. G, SAF 00154.)

78. As it relates to Section II – Liability Coverage, the Policies also contain a Concealment or Fraud provision which provides, in pertinent part:

> This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.
>
> We may void this policy or deny coverage for a loss or *occurrence* if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.
>
> We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or *occurrence*. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

(Ex. E, SAF 00036; Ex. F, SAF 00086; Ex. G, SAF 00157.)

## Count I – Declaratory Judgment – Safeco has no duty to defend Mr. Dent in the Underlying Action

79. Safeco incorporates herein by reference the allegations of the preceding paragraphs as if re-written in full.

80. An actual controversy exists regarding whether Safeco has a duty to defend Mr. Dent in the Underlying Action against the First Amended Complaint.

81. An actual controversy exists regarding whether Safeco has a duty to defend Mr. Dent in the Underlying Action against the First Amended Crossclaim.

82. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because the allegations therein do not allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence."

83. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(a) excludes said "property damage" from coverage.

84. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(b) excludes said "property damage" from coverage.

85. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(c) excludes said "property damage" from coverage.

86. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(e) excludes said "property damage" from coverage.

87. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim under the Additional Liability Coverage provision.

88. Safeco has no duty to defend Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein did otherwise give rise to coverage, the Concealment and Fraud provision excludes such claims from coverage.

89. Safeco has no duty to defend Mr. Dent against the First Amended Complaint or the First Amended Crossclaim because Mr. Dent is not entitled to a defense pursuant to the other terms, conditions, limitations and exclusions of the Policy.

90. Pursuant to 28 U.S.C. §2201, and for the foregoing reasons, Safeco hereby seeks a declaration from the Court that is has no duty to defend Mr. Dent against the First Amended Complaint or the First Amended Crossclaim.

## Count II – Declaratory Judgment – Safeco has no potential duty to indemnify Mr. Dent in the Underlying Action

91. Safeco incorporates herein by reference the allegations of the preceding paragraphs as if re-written in full.

92. An actual controversy exists regarding whether Safeco has a potential duty to indemnify Mr. Dent in the Underlying Action against the First Amended Complaint.

93. An actual controversy exists regarding whether Safeco has a potential duty to indemnify Mr. Dent in the Underlying Action against the First Amended Crossclaim.

94. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because the allegations therein do not allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence."

15

95. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(a) excludes said "property damage" from coverage.

96. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(b) excludes said "property damage" from coverage.

97. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(c) excludes said "property damage" from coverage.

98. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein do allege that Ohio Security or Dent Properties suffered "property damage" caused by an "occurrence," Exclusion (1)(e) excludes said "property damage" from coverage.

99. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim under the Additional Liability Coverage provision.

100. Safeco has no potential duty to indemnify Mr. Dent against either the First Amended Complaint or the First Amended Crossclaim because, even if the allegations therein did otherwise give rise to coverage, the Concealment and Fraud provision excludes such claims from coverage.

101. Safeco has no potential duty to indemnify Mr. Dent against the First Amended Complaint or the First Amended Crossclaim because Mr. Dent is not entitled to a defense pursuant to the other terms, conditions, limitations and exclusions of the Policy.

102. Pursuant to 28 U.S.C. §2201, and for the foregoing reasons, Safeco hereby seeks a declaration from the Court that is has no potential duty to indemnify Mr. Dent against the First Amended Complaint and the First Amended Crossclaim.

**WHEREFORE**, Plaintiff Safeco Insurance Company of Indiana prays for the following relief from this Court:

(1) On Count 1, a Declaration that it has no duty to defend Mr. Dent in the Underlying Action;

(2) On Count II, a Declaration that it has no potential duty to indemnify Mr. Dent in the Underlying Action; and

(3) Any other relief the Court deems appropriate.

Respectfully submitted,

*/s/ William M. Harter*
William M. Harter (0072874)
Michelle Y. Harrison (0093814)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio 43215-3467
(614) 559-7226 / (614) 464-1737 - Facsimile
wharter@fbtlaw.com
myharrison@fbtlaw.com
*Attorneys for Safeco Insurance Company of Indiana*